UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DHL EXPRESS (USA), INC., <br><br>      Plaintiff, <br>   v. <br><br> INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 25, <br><br>      Defendant. | Civil Action No.: 20-12215 |

**COMPLAINT TO ENFORCE ARBITRATION AWARD**

Plaintiff DHL Express (USA), Inc. ("DHL") brings this action against International Brotherhood of Teamsters, Local 25 ("Local 25" or the "Union") to enforce an arbitration award pursuant to a collective bargaining agreement between the parties. This summer, DHL needed Union-represented employees at its facility in Boston, Massachusetts to work on seven successive Sundays. When it did not receive sufficient volunteers, DHL required couriers by reverse seniority to work on those Sundays. Some employees refused to show up for work for which they received disciplined. DHL applied a three-step disciplinary process to those employees: written warning, suspension and then discharge. The Union grieved the issuance of discipline and took the grievance to arbitration. Pursuant to the parties' collective bargaining agreement, the employees were permitted to remain on the job pending the resolution of the grievance. At arbitration, the Union lost. Its grievance was denied, and as a result, the employees who had been notified of their discharge were removed from service.

Unwilling to accept the arbitrator's decision, the Union first asked the arbitrator to reopen the hearing and consider additional arguments about whether there was just cause for the issuance of discipline. The arbitrator denied the request (hereinafter, "the Denial"), explaining she lacked

jurisdiction to hear these new arguments. Seizing on a stray comment in the Denial that these arguments had not been presented to her, the Union filed new grievances relating to the same suspensions and discharges and seeks to arbitrate anew the issues that were before the original arbitrator or could have been raised to her. For these reasons, DHL is entitled to an order enforcing the original award and confirming that the Union's grievance was denied. Further, DHL seeks a declaration that the arbitrator correctly concluded that she lacked jurisdiction to consider the Union's arguments that it could have raised at the original hearing but declined to do so. Finally, to the extent that the Union contends that the sentence in the Denial can be interpreted to mean that the Union is free to re-litigate whether the Company had just cause to suspend or discharge the employees, it should be vacated as contrary to the parties' agreement and as an improper modification of the original award.

## Jurisdiction and Venue

1.      This Complaint is brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 185. Venue is proper under 29 U.S.C. § 185 and 28 U.S.C. § 1391.

## Facts

2.      DHL is a global provider of pickup, delivery and courier services, specializing in international shipping.

3.      DHL maintains a facility at 420 E Street, South Boston, Massachusetts, referred to as BOS Station.

4.      The Union is an unincorporated association and a "labor organization" as defined by 29 U.S.C. § 152(5).  The Union is headquartered at 544 Main St, Charlestown, Massachusetts.

5. DHL is party to a collective bargaining agreement, referred to as the National Master Agreement, ("the National Agreement") with the International Brotherhood of Teamsters. A copy of the Agreement is attached hereto at Exhibit A. The National Agreement was negotiated nationally by DHL Express and the Teamster DHL National Negotiating Committee ("the TDHLNNC"), and it is administered by the Express Division of the International Brotherhood of Teamsters.

6. In addition, DHL and the TDHLNNC are parties to a Pick Up and Delivery Operational Supplement ("Supplement"), a copy of which is attached as Exhibit B, and a New England Area Pickup and Delivery Supplement ("New England Agreement"), a copy of which is attached as Exhibit C.

7. Local 25 is the exclusive bargaining representative of couriers and clerical agents at BOS.

8. The Local 25-represented couriers at BOS are covered by the National Master Agreement, the Supplement and the New England Agreement.

9. The New England Agreement contains a grievance and arbitration provision. Article 28, Section 1 defines a grievance as "a complaint or dispute arising under and during the term of this Agreement raised by an Employee or the Union against the Employer involving an alleged violation, misinterpretation or misapplication of any provision of this Agreement."

10. Article 28, Section 2 provides that a grievance involving a disciplinary matter must be filed within the ten (10) days of receipt of the discipline. A grievance involving any other matter must be filed within thirty (30) days in connection with all other matters. Section 6 states that a grievance will be waived if not filed within the time limits set forth in the Agreement.

11. The grievance process provides for various steps, culminating in arbitration before an arbitrator. In cases involving discipline or discharge, the parties have agreed to use the American Arbitration Association ("AAA") as the forum for arbitration. Arbitration of all other cases are not before the AAA.

12. Article 28, Section 7 states that a decision of an arbitrator shall be "final and binding on the Employer, the Union and the Employees."

13. Article 29 of the New England Agreement relates to discipline and it provides that an employee shall not be suspended or discharged without just cause. Except in the case of cardinal infractions, "an employee to be discharged or suspended shall be permitted to remain on the job until the discharge or suspension is sustained under the grievance procedure."

14. Beginning in June 2020, the Station Manager for BOS began seeking volunteers from among the Local 25-represented employees to work on Sunday on an overtime basis to meet business demands. However, the number of volunteers was insufficient to meet the needs of the business.

15. For a period of seven weeks beginning on Sunday July 5, DHL required couriers by reverse seniority to work Sunday overtime after obtaining insufficient volunteers.

16. Thirty-four employees who were required to work on Sunday, July 5, 2020 did not report to work that day. Each received written warnings for their unauthorized absences.

17. On July 7, 2020, Local 25 filed a grievance relating to the written warnings, a copy of which is attached hereto at Exhibit D. The grievance was brought on behalf of "All Affected" employees. The grievance alleged that "Company is attempting to discipline employees for NOT coming in on a 'non-scheduled' work day (Sunday)." As a "Settlement Desired," Local 25

requested that DHL "withdraw all warning letters from employees file [sic] and cease + desist of this practice now + future." The grievance is hereafter referred to as the "July 7, 2020 Grievance."

18. Thirty employees who were required to work on Sunday, July 12, 2020 did not report to work that day. Twenty of the employees received suspensions because they had received written warnings the prior week. The remainder received written warnings.

19. Twenty-five employees who were required to work on Sunday July 19, 2020 did not report for work. Thirteen employees received discharge notices because they had previously received a written warning and then a suspension. However, pursuant to Article 29 of the New England Agreement, they were permitted to remain on the job. Seven employees received a suspension because they had received a written warning in a prior week. Five employees received written warnings.

20. Seventeen employees who were required to work on Sunday, July 26, 2020 did not report for work. Ten employees received discharge notices. Four of them had received discharge notices the prior week, and the remainder had previously received a written warning and then a suspension. Again, pursuant to Article 29 of the New England Agreement, the employees who received discharge notices were permitted to remain on the job. Seven employees received a suspension because they had received a written warning in prior weeks.

21. Nineteen employees who were required to work on Sunday, August 2, 2020 did not report for work. Sixteen employees received discharge notices. Nine of them had received a discharge notice already. Again, pursuant to Article 29 of the New England Agreement, the employees who received discharge notices were permitted to remain on the job. One employee received a suspension, and two employees received a written warning.

22. Twenty-one employees who were required to work on Sunday, August 9, 2020 did not report for work. Sixteen employees received discharge notices. Twelve of them had received a discharge notice already. Again, pursuant to Article 29 of the New England Agreement, the employees who received discharge notices were permitted to remain on the job. Four employees received a suspension, and one employee received a written warning.

23. Twenty-six employees who were required to work on Sunday, August 16, 2020 did not report for work. Twenty-one employees received discharge notices. Seventeen of them had received a discharge notice already. Again, pursuant to Article 29 of the New England Agreement, the employees who received discharge notices were permitted to remain on the job. Two employees received a suspension, and three employees received a written warning.

24. At the Union's request, the Company agreed to treat the Union's July 7, 2020 Grievance as applicable to all of the disciplines and discharges issued in connection with Sunday work.

25. The Union took the July 7, 2020 Grievance to arbitration before the AAA, thereby demonstrating that matter involved the discipline or discharge of employees.

26. Attached hereto at Exhibit E is a true and correct copy of the Union's Demand for Arbitration. In its Demand, the Union was required to check off the nature of the grievance, and it selected "Discharge" and "Suspension." As to a description of the grievance, the Union wrote, "[a]ll affected employees unjustly suspended and discharged." As a remedy, the Union requested that the arbitrator "[r]escind discharge and suspension."

27. The July 7, 2020 Grievance was presented to a neutral arbitrator of the AAA at a hearing on October 14, 2020.

28.     DHL and Local 25 jointly introduced as an exhibit at the hearing a chart showing all of the employees who had been disciplined or discharged for their failure to report for Sunday work, along with each of the discipline letters issued to them. A copy of the chart is attached hereto at Exhibit F.

29.     On October 28, 2020, the Arbitrator Talmadge issued a written award, a copy of which is attached as Exhibit G. The award is hereinafter referred to as the "Talmadge Award."

30.     The Award identifies the Union's grievance, in one instances, as relating to "[a]ll affected employees unjustly suspended or discharged" and in another instance as "unjust discipline."

31.     As found by the Arbitrator, DHL contended at the hearing that it had the right to require Sunday work and that "the three step disciplinary progression met the requirements of just cause."

32.     DHL stated that the issue to be decided at arbitration was whether the Company had the right under the collective bargaining agreement to require Sunday work after seeking volunteers and "[i]f so, does the Company's three-step disciplinary program (Written Warning, Suspension, Discharge) meet the requirements of just cause discipline."

33.     In her award, the Arbitrator set out the positions of both parties. As to the Company's position, the Arbitrator wrote that the Company "believes that the [disciplinary] progression was appropriate under the circumstances." In contrast, the Union took the position that the Company had no authority to require Sunday work and that as a remedy, "the Company should be immediately ordered to rescind all disciplines."

34.     The Arbitrator concluded that "the Company did not violate the contract when the Station Manager did not get sufficient volunteers to work Sunday overtime and required employees

in reverse order of seniority to work." As to the suspensions and discharges, the Arbitrator wrote, "[t]he Company's issuance of a three-step progression (written warning, suspension and discharge) for bargaining unit members who refused to perform bargaining unit work does not appear to violate Article 29 of the New England Supplement."

35. The Arbitrator therefore concluded that "[t]he grievance is denied."

36. On November 2, 2020, the Company effectuated the terminations of those employees who had received termination letters.

37. Under Rule 40 of the Labor Arbitration Rules of the AAA, a party may request an arbitrator correct "any clerical, typographical, technical or computational errors in the award" within 20 days. However, the rule expressly states that "[t]he arbitrator is not empowered to redetermine the merits of any claim already decided."

38. On November 19, 2020, twenty-two days after the issuance of the Award, the Union wrote to the Arbitrator requesting that she "hold additional hearing(s)" because of a disagreement between the parties regarding the application of the Award. Specifically, the Union contended that some of the employees should not have been disciplined for various reasons. A copy of the Union's request is attached hereto at Exhibit H.

39. The following day, on November 20, 2020, the Union presented grievances to DHL alleging that each of employees had been unjustly discharged in violation of Article 29 of the New England Agreement. Attached hereto at Exhibit I is a true and correct copy of these grievances.

40. On November 23, 2020, DHL opposed the Union's request, explaining that the request was barred by the AAA rules, that the parties fully litigated the case, and that the Union could have raised the arguments it sought to raise at the original hearing. A copy of the Company's response is attached hereto at Exhibit J.

41. On November 24, 2020, the Union sent another letter to the AAA, a copy of which is attached at Exhibit K. This time, the Union claimed it was not seeking to re-open the record, but sought a "clarification" as to the applicability of the Award to individual employees. The letter stated that the Award did not address whether "the progressive discipline issued to any one employee was in conformance with the discipline provisions of the collective bargaining agreement."

42. On November 25, 2020, DHL responded to the Union's November 24, 2020 letter, a copy of which is attached hereto at Exhibit L.

43. On December 4, 2020, the Arbitrator issued the Denial of the Union's request. The Arbitrator concluded that she "did not have jurisdiction to hold a hearing to clarify the application of the Award." She denied the Union's request. A copy of the Denial is attached hereto at Exhibit M.

44. In dicta, the Arbitrator noted that "the parties did not frame the issue as the application of just cause to the discipline of certain named bargaining unit members and, therefore, that issue was not addressed."

45. On December 8, 2020, the Union presented 25 additional grievances on behalf of each of the employees who had been suspended or discharged, alleging that because of the "clarification" by the Arbitrator in the Ruling, the employees were entitled to remain on the job pending an arbitrator's determination that their grievance was sustained. Attached hereto at Exhibit N is a true and correct copy of these grievances.

46. In total, Local 25 has presented 50 grievances since the Arbitrator's issuance of the Award. The grievances presented on November 20 and December 8 are collectively referred to as the New Grievances.

47. The Union seeks to grieve anew and take to arbitration whether there was just cause for the discharge and suspension of the employees who were the subject of the Talmadge Award.

48. When asked by DHL to clarify which grievances the Union sought to pursue, including the July 7, 2020 Grievance that led to the Talmadge Award, Local 25 responded "all the grievances concern the same issue -- whether the terminations and/or the suspensions were for just cause" and suggested that a single arbitrator should hear all of them. A copy of this communication is attached hereto as Exhibit O.

## COUNT I:  ENFORCEMENT OF THE TALMADGE AWARD

49. Paragraphs 1 through 48 are incorporated by reference as if fully set forth herein.

50. By its July 7, 2020 Grievance, the Union challenged the disciplines and discharges issued to employees for not working on Sundays in July and August 2020.

51. The Talmadge Award denied the Union's July 7, 2020 Grievance.

52. Under the parties' grievance and arbitration procedure, the Talmadge Award is a final and binding award.

53. The Union failed to move to vacate the Award within the time prescribed by M.G.L. Ch. 150C, § 10.  Under Section 10, the Union's failure to vacate the Award mandates that it should be enforced and confirmed.

54. The Union insists that it can continue to pursue and arbitrate the July 7, 2020 Grievance in the face of the final and binding Talmadge Award.

55. The Union now seeks to arbitrate, including through the New Grievances, whether there was just cause for the suspensions and disciplines that were the subject of the July 7, 2020 Grievance.  All of the arguments that the Union seeks to make could have been asserted in the hearing that led to the Talmadge Award.

56. There is no colorable basis for denying the applicability of the Talmadge Award to the current dispute between the parties, as they involve the same suspensions and discharges.

57. DHL is entitled to an order enforcing the Talmadge Award and confirming that the Union's grievance was denied. Further, DHL seeks an order concluding that the Union may not challenge the suspensions and discharges through a new arbitration proceeding.

### COUNT II: DECLARATION THAT THE DENIAL DID NOT AUTHORIZE THE UNION TO RE-OPEN THE GRIEVANCE

58. Paragraphs 1 through 57 are incorporated by reference as if fully set forth herein.

59. The Union requested that the hearing be re-opened and that the Award be clarified to address whether the issuance of discipline as to individual employees was consistent with just cause.

60. In the Denial, the Arbitrator determined that she had no jurisdiction to address the issues raised by the Union and denied the Union's request.

61. DHL is entitled to a declaration that the arbitrator was correct in determining that she had no jurisdiction to reopen the hearing or modify the Award to address new arguments by Local 25.

### COUNT III: VACATE THE DENIAL TO THE EXTENT THE UNION CONTENDS IT IS FREE TO ARBITRATE ANEW THE SUSPENSIONS AND TERMINATIONS

62. Paragraphs 1 through 61 are incorporated by reference as if fully set forth herein.

63. In the Denial, the arbitrator stated, after determining that she had no jurisdiction to hear the Union's new arguments, that "the parties did not frame the issue as the application of just cause to the discipline of certain named bargaining unit members and, therefore, that issue was not addressed."

64. As the Denial itself states, the Arbitrator had no authority to address this issue or any other issue the Union sought to raise. As such, the statement is a nullity or dicta. In context, the statement is a recognition that the Union never presented, let alone argued, that there were individualized issues relating to the just cause analysis as to some of the employees, and that the Union waived these arguments.

65. However, the Union contends that this sentence means it is free to grieve and arbitrate anew whether there was just cause for each of the suspensions and discharges. As such, that sentence of the Denial should be vacated.

66. The Union's interpretation of this sentence of the Denial, if correct, does not draw it essence from the parties' agreement.

67. The Union's interpretation of this sentence of the Denial, if correct, amounts to an impermissible modification of the Award, as the Company squarely presented the just cause issue and the arbitrator denied the July 7, 2020 Grievance.

68. The Union's interpretation of this sentence of the Denial, if correct, means the arbitrator exceeded her authority and dispensed her own brand of industrial justice to the extent that it would permit the Union to raise new arguments or facts in a new arbitration.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1. An order enforcing the Talmadge Award, confirming that the Union's grievance was denied and concluding that the Union may not challenge the suspensions and discharges through a new arbitration proceeding;

2. An order declaring that the Arbitrator had no jurisdiction to consider arguments by the Union after the issuance of the Talmadge Award;

3. An order vacating the sentence in the Denial relating to the application of just cause to some suspensions and discharges; and

4. Any further relief as the Court deems just and proper.

Dated: December 14, 2020

        Respectfully Submitted,

        DHL EXPRESS (USA), INC.

        By its counsel:

              */s/ Robert A. Fisher*
              Robert A. Fisher (BBO # 643797)
              John Ayers-Mann (BBO # 703184)
              rfisher@seyfarth.com
              jayersmann@seyfarth.com
              SEYFARTH SHAW LLP
              Two Seaport Lane, Suite 300
              Boston, MA 02210-2028
              Telephone:  (617) 946-4800
              Facsimile:   (617) 946-4801